UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DIERDRE R.,

                                    Plaintiff,

v.                                                               5:17-cv-0395
                                                                                  (TWD

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINKSY LAW GROUP<br>  Counsel for Plaintiff<br>300 S. State St.<br>Suite 420<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL<br>REGION II<br>  Counsel for Defendant<br>26 Federal Plaza - Room 3904<br>New York, NY 10278 | OONA MARIE PETERSON, ESQ. |

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## **DECISION AND ORDER**

      Plaintiff Deirdre R. brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her Disability Insurance Benefits ("DIB"). This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is denied

and Defendant's motion for judgment on the pleadings (Dkt. No. 10) is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's complaint (Dkt. No. 1) is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1962, and lives with her husband. (T. 621.[1]) She has a high school education and previously worked as a pharmacy technician, hospital unit clerk, and customer order clerk. (T. 630.) Plaintiff alleges disability due to back pain, Crohn's disease, glaucoma, a head injury, knee problems, and depression. (T. 726.) Her alleged disability onset date is August 25, 2012, at which time she was 50 years old. (T. 180, 621.)

### B. Procedural History

On January 16, 2014, Plaintiff filed an application for DIB, alleging disability as of August 25, 2012. (T. 621[2].) The application was denied on March 18, 2014. (T. 631.) Thereafter, Plaintiff filed a written request for a hearing, which was held on July 21, 2015, before Administrative Law Judge ("ALJ") F. Patrick Flanagan. (T. 540-91.) At the hearing, Plaintiff was represented by Megan Savai-Ortiz of Olinsky Law Group. *Id*. A vocational expert ("VE") testified at the hearing. (T. 587-89.)

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.

[2] Plaintiff previously filed an application for DIB on December 9, 2010, alleging disability beginning October 22, 2009, due to depression, Crohn's disease, a back problem, head injury, and knee pain. (T. 180, 664.) That application was denied on March 3, 2011, and again, after a hearing, on August 24, 2012. (T. 180.) The Appeals Counsel denied Plaintiff's request for review and Plaintiff did not seek judicial review. *Id*. Accordingly, Plaintiff's alleged onset date is August 25, 2012. *Id*.

On November 3, 2015, the ALJ issued a decision finding Plaintiff was not disabled from the alleged onset day through the date last insured. (T. 180-190.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 17, 2017. (T. 141-43.) Plaintiff timely commenced this action on April 7, 2017. (Dkt. No. 1.)

**C.     The ALJ's Decision**

The ALJ found Plaintiff last met the insured status requirements of the Social Security Act through September 30, 2015. (T. 182.) She has not engaged in substantial gainful activity since August 25, 2012. *Id*. He found Plaintiff has the following severe impairments: status-post 2009 head injury, degenerative joint disease and degenerative disc disease of the lumbosacral spine, possible internal derangement of the right knee, depression, and anxiety. (T. 183.) He found Plaintiff also has the following non-severe impairments: status-post cholecystectomy, fatty liver, gastroesophageal reflux disease, hypertension, and hypothyroidism. *Id*. The ALJ determined Plaintiff did not have an impairment or combination of impartments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 185.) The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 1567(b)[3], with the following limitations:

> she was limited to occasional stooping, balancing, crouching, crawling, kneeling and climbing of ramps and stairs, but could never climb ladders, ropes or scaffolds and had to avoid heights,

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 1567(b).

>dangerous machinery and occupational driving. She could
>understand, remember and carry out simple, non-complex
>instructions and tasks; maintain attention and concentration for
>simple tasks; have no more than occasional decision making, relate
>adequately with others; and withstand stress and pressure of day to
>day work activity.

(T. 185.) In making this determination, the ALC accorded great weight to the opinions of consultative examiners Elke Lorensen, M.D. and Rebecca Fisher, Psy.D. and great weight to the opinion of state agency consultant Eric Selesner, Psy.D. (T. 187-88.) The ALJ found Plaintiff unable to perform her past relevant work; and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T. 189-90.) The ALJ concluded Plaintiff was not under a disability within the meaning of the SSA from August 25, 2012, the alleged onset date, through September 30, 2015, the date last insured. (T. 190.)

## II. THE PARTIES' CONTENTIONS

Plaintiff argues the physical RFC determination is not supported by substantial because the ALJ failed to weigh the opinion by treating physician August M. Buerkle, Jr., M.D., and failed to include limitations opined by Dr. Lorensen. (Dkt. No. 9 at 6-9.[4]) Plaintiff also claims the ALJ's hypothetical question failed to properly consider all of Plaintiff's mental impairments and, as a result, the VE's testimony did not constitute substantial evidence to support the ALJ's decision that Plaintiff could perform work that exists in the national economy. *Id*. at 9-10. In response, Defendant contends the ALJ's decision applied the correct legal standards and is supported by substantial evidence. (Dkt. No. 10 at 6-12.)

---

[4] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

## III. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a plaintiff seeking SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2015).[5] In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority, 42 U.S.C. § 405(a), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520(a)(4). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there

---

[5] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) (SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

**B. Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248

6

(N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## IV. ANALYSIS

### A. Opinion Evidence and the Physical RFC Determination

A claimant's RFC is the most the individual can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work

7

schedule. *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. § 404.1546(c). In making a RFC determination, "the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 5:11-cv-927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).

Plaintiffs asserts the ALJ erred in weighing the medical opinion evidence in the record, and, therefore, the ALJ's physical RFC is not supported by substantial evidence. Specifically, Plaintiff argues the ALJ failed to weigh the opinion of Dr. Buerkle and failed to include Dr. Lorensen's moderate to marked limitations related to bending, lifting (beyond the requirement of light work), and reaching.

          1.    **Opinion of Dr. Buerkle**

Plaintiff treated with Dr. Buerkle on six occasions from September 15, 2011, through March 7, 2013. (T. 857-866.) In a March 1, 2012, encounter note, Dr. Buerkle stated, "In my opinion, she could do a light duty job." (T. 859.) Plaintiff argues the ALJ committed legal error warranting remand by failing to assign a weight to Dr. Buerkle's opinion. (Dkt. No. 9 at 6.) Plaintiff is correct that the ALJ did not specify the weight afforded to Dr. Buerkle's March 1, 2012, opinion. (T. 185-88.) However, the Court agrees with the Commissioner that the physical

8

RFC was consistent with Dr. Buerkle's treatment records and any error is harmless. (Dkt. No. 10 at 6-7.)

The Second Circuit has long recognized the "treating physician's rule" set out in 20 C.F.R. § 416.927(c). "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

With respect to the ALJ's written decision, it must contain "good reasons" for the weight given to the treating source's opinion. *Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998) (citation omitted). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)). However, an error in weighing a treating physician's opinion may be considered harmless where proper consideration of that opinion would not change the outcome of the claim. *Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Camarata v. Colvin*, 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying the request for remand

because application of the correct legal standard would not change the outcome); *Palaschak v. Astrue*, No. 08-CV-1172 (GLS), 2009 WL 6315324, at *4 (N.D.N.Y. Nov. 13, 2009) (same).

Here, the ALJ adequately summarized Plaintiff's treatment with Dr. Buerkle:

> [I]n August 2011, an x-ray showed lumbarization of S1 and osteophyte formation between L2-L5 [(T. 863)]. Although an x-ray of the right knee showed dense calcification attached to the superior aspect of the medial femoral condyle, it was otherwise unremarkable [(T. 863-64)]. Subsequently, an MRI of the right knee showed nonedematous thinning of the ACL, suggestive of a distant injury and mild thinning of the articular cartilage of the lateral facet of the patella [(T. 865)]. **As such, she was diagnosed with degenerative disc disease and chrondomalacia patella, but advised she could do light duty work** [(T. 859)]. By April 2012, her main complaints were of low back pain as her knee was not doing badly [(T. 861)]. At that time, facet injections were recommended [(*id.*)]. Then in November, she was allegedly involved in another accident, where she hit a telephone pole [(T. 880)]. However, she did not go to the emergency room and instead, followed up with her primary care provider a week later [(*id.*)]. Later that month, a CT was unremarkable despite her complaints of confusion and decreased concentration [(T. 1092)]. By December, her pain was controlled with medication [(T. 878)]. Then, in March 2013, she reported spontaneous onset of left knee pain [(T. 862)]. As x-rays were unremarkable, physical therapy was recommended [(*id.*)].

(T. 186-87, emphasis added.) While the ALJ failed to assign any weight to Dr. Buerkle's opinion in contravention of the treating physician's rule, the Court finds the error harmless. *See Jones v. Barnhart*, No. 02 Civ. 0791 (SHS), 2003 WL 941722, at *10 (S.D.N.Y. Mar. 7, 2003) (finding harmless error in the ALJ's failure to grant weight to the claimant's treating physicians because "he engaged in a detailed discussion of their findings, and his decision does not conflict with them"); *Pease v. Astrue*, No. 5:06-CV-0267 (NAM/DEP), 2008 WL 4371779, at *8 (N.D.N.Y. Sept. 17, 2008) ("The ALJ provided a detailed summary and analysis of the reports and records of all treating and examining physicians[.]); *Walzer v. Chater*, No. 93 Civ. 6240

10

(LAK), 1995 WL 791963, at *9 (S.D.N.Y. Sept. 26, 1995) ("[T]he ALJ's failure to [discuss a report completed by claimant's treating physician] was harmless error, since his written consideration of [the] report would not have changed the outcome of the ALJ's decision."). Inasmuch as specific consideration of Dr. Buerkle's opinion that Plaintiff could perform "light duty work" would not change the outcome of the claim, remand is not required on this basis.

### 2. Opinion of Dr. Lorensen

Plaintiff contends her physical RFC determination is erroneous because the ALJ did not include Dr. Lorensen's limitations related to bending, lifting, or reaching. (Dkt. No. 9 at 6-9.) The Commissioner argues the ALJ's physical RFC is supported by substantial evidence. (Dkt. No. 9 at 6-9.)

Dr. Lorensen conducted a consultative internal medicine examination on March 11, 2014. (T. 1011-14.) Plaintiff reported back pain, neck pain, memory loss, and occasional dysarthria. (T. 1011.) She stopped working in 2009 after a motor vehicle accident. *Id*. Plaintiff reported her lower back pain is aggravated or brought on by prolonged sitting, standing, or climbing stairs. *Id*. She has a full flight of stairs at her home, which she climbs slowly while holding onto the banister. *Id*. She stated her lower back pain does not radiate upwards nor into her extremities. *Id*.

Dr. Lorensen found no evidence of dysarthria or significant memory loss during the examination. *Id*. Plaintiff appeared to be in no acute distress. (T. 1012.) Her gait was very even with only a slight detection of unsteadiness and hesitancy in her walk. *Id*. She declined to walk on her heels or toes, or squat. *Id*. Her stance was normal and she used no assistive devises. *Id*. She needed no help changing for the examination and getting on and off the examination table. *Id*. She was able to rise from a chair without difficulty. *Id*.

11

Upon examination, her cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (T. 1013.) There was no evidence of scoliosis, kyphosis, or abnormality of her thoracic spine. *Id*. Dr. Lorensen observed Plaintiff's lumbar spine had flexion of 50 degrees and extension, lateral flexion, and rotation of 15 degrees. *Id*. Dr. Lorensen noted Plaintiff had forward elevation and abduction of both shoulders of 120 degrees. *Id*. Straight leg raising was negative bilaterally. *Id*. She had full range of motion in her elbows, forearms, and wrists bilaterally. *Id*. She was able to flex her knee 75 degrees bilaterally. (T. 1013.) She had full range of motions in her ankles bilaterally. *Id*. There was no evidence subluxations, contractures, ankylosis, or thickening. *Id*. Her joints were stable and nontender. *Id*. There was no redness, heat, swelling, or effusion. *Id*.

Upon neurological examination, Dr. Lorensen reported Plaintiff's deep tendon reflexes were physiologic and equal in upper and lower extremities. *Id*. No sensory defect was noted. *Id*. Plaintiff's strength was rated 5/5 in both upper and lower extremities. *Id*. There was no cyanosis, clubbing, or edema. (T. 1014.) Dr. Lorensen noted no significant varicosities or trophic changes; no muscle atrophy evident. *Id*. Her hand and finger dexterity were intact and her grip strength was rated 5/5 bilaterally. *Id*. An accompanying March 13, 2014, lumbosacral spine x-ray indicated only degenerative changes. (T. 1014, 1015.) Her prognosis was "fair." *Id*.

In a medical source statement, Dr. Lorensen opined "[t]here are no gross limitations sitting, standing, walking, handling small objects with the hands. There are moderate to marked restrictions bending, lifting, and reaching." *Id*.

In formulating his RFC determination, the ALJ accorded Dr. Lorensen's opinion "great weight." (T. 187.) However, the ALJ rejected the doctor's opinion for moderate to marked

12

restricting for bending, lifting, and reaching. *Id*. The ALJ reasoned such limitations regarding bending, lifting, and reaching were "not supported by the evidence of record." *Id*.

Here, Plaintiff argues the ALJ did not fully explain his reasons for rejecting Dr. Lorensen's limitations, the ALJ impermissibly substituted his own lay opinion for that of an acceptable medical source, and substantial evidence in the record supports Dr. Lorensen's limitations. (Dkt. No. 9 at 6-9.)

As an initial matter, the ALJ's adoption of only a portion of an opinion was not inherently improper; indeed, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also Tennant v. Comm'r of Soc. Sec.*, No. 6:16-CV-360 (DJS), 2017 WL 1968674, *8 (N.D.N.Y. May 10, 2017); *Allen o/b/o Allen v. Comm'r of Soc. Sec.*, No. 5:16-CV-1207 (WBC), 2017 WL 6001830, *6 (N.D.N.Y. Dec. 4, 2017). An ALJ may therefore accept portions of a medical opinion that are consistent with the record, and choose not to accept portions that are inconsistent with the record.

In addition to Dr. Buerkle's treatment notes and Dr. Lorensen's medical opinion, the ALJ adequately summarized other medical evidence of record:

> In May 2014, an MRI showed a posterior right disc protrusion mildly impressing the right ventral CSF space without central canal or neural foraminal stenosis [(T. 1019)]. It also showed minimal narrowing of the inferior aspect of the left L2-3 and L3-4 neural foramina and mild narrowing of the L4-5 recess without central canal or neural foraminal stenosis [(*id*)]. More recently, in an April 2015 follow up with her primary care provider, she denied pain and was only ambulating with a cane occasionally [(T. 1021-23)].

(T. 187, citations in original.[6]) The ALJ noted the medical record showed the treatment Plaintiff received was routine and conservative. (T. 188.) Although she was recommended for physical therapy, there is no record that she ever attended physical therapy. *Id*.; *see Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("An ALJ "is entitled to rely not only on what the record say, but also on what the record does not say.").

The ALJ also determined Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms was not fully credible. (T. 186.) For example, although Plaintiff testified that she had not driven since 2009, she was allegedly involved in another car accident in 2012. (T. 186, 549-51, 880.) Further, despite reporting always using a cane, she did not use a cane at the hearing and testified her husband helped her into the building and her representative helped her into the hearing room. (T. 186, 568-69.)

In terms of daily activities, the ALJ noted Plaintiff washes the dishes, loads and unloads laundry, and cooks, albeit with difficulty. (T. 186, 572.) She reported her husband helps with her personal care. (T. 571.) She testified she climbs the stairs in her home approximately 5 times per day with the use of the railing and wall. (T. 186, 571.) After careful consideration of the evidence, the ALJ found Plaintiff's testimony and allegations were not fully credible. (T. 186.)

---

[6] As pointed out by the Commissioner, Plaintiff also refers to the May 9, 2014, MRI of Plaintiff's spine and March 11, 2014, x-ray of Plaintiff lumbosacral spine "as substantial evidence in the record" but does not explain how they require more limitations than those in the physical RFC. (Dkt. No. 9 at 8; Dkt. No. 10 at 9.) Nor does she explain how they undermine the ALJ's decision or show it was unreasonable. (Dkt. No. 10 at 9.)

Although Dr. Lorensen found diminished range of motion of Plaintiff's lumbar spine and shoulders, given the other findings, all of which were essentially normal, and in light of the record as a whole, the Court concludes the ALJ's decision to discount Dr. Lorensen's opinion that Plaintiff had moderate to marked restrictions, bending, lifting, and reaching was supported by substantial evidence. *See, e.g.*, *Babcock v. Berryhill*, No. 5:17-cv-00580 (BKS), 2018 WL 4347795, at *13 (N.D.N.Y. Sept. 12, 2018) (substantial evidence supported the ALJ's decision to reject consultative examiner's opinion that the claimant had moderate to marked limitations reaching); *Disotell v. Comm'r of Soc. Sec.*, No. 7:16-CV-0480 (WBC), 2017 WL 3491851, at *5 (N.D.N.Y. Aug. 14, 2017) (substantial evidence supported the ALJ's decision to reject consultative examiner's opinion that the claimant had marked limitations in reaching).

Indeed, it is well settled in the Second Circuit that it is the ALJ's role to weigh medical opinion evidence and to resolve conflicts in that evidence. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."). Because Dr. Lorensen's moderate to marked limitations were not supported by the objective evidence in the record, the ALJ did not err in rejecting these portions of Dr. Lorensen's opinion.[7]

---

[7] Additionally, the Court agrees with the Commissioner that even had the ALJ accepted Dr. Lorensen's limitations, moderate to marked limitations does not necessarily preclude the performance of light work. *See, e.g.*, *Babcock*, 2018 WL 4347795, at *12 n.13 (noting moderate to marked restriction in lifting was consistent with light work); *Moxham*, 2018 WL 1175210, at *8 (finding marked limitations in squatting, lifting, and carrying is not inconsistent with light work); *Humes v. Colvin*, No. 3:14-CV-0512 (GTS), 2016 WL 1417823, at *2 (N.D.N.Y. Apr. 11, 2016) (adopting report-recommendation finding marked limitations in bending and squatting is not inconsistent with light work, which requires occasional bending); *see also Joseph K. v. Comm'r of Soc Sec.*, No. 5:17-CV-748 (DJS), 2018 WL 3716780, at *5 (N.D.N.Y. Aug. 2, 2018) ("If a person can stoop occasionally . . . the sedentary and occupational base is virtually intact.").

As to Plaintiff's argument that the ALJ impermissibly substituted his own lay opinion for that of an acceptable medical source, as discussed above, the Court finds the ALJ cited sufficient evidence in the record to support his determination regarding Plaintiff's physical RFC. *See Moxham v. Comm'r of Soc. Sec.*, No. 3:16-CV-1170 (DJS), 2018 WL 1175210, at*7 (N.D.N.Y. Mar. 5, 2018) ("There is no legal requirement that the ALJ rely on a medical opinion in every case to formulate the RFC. Rather, the ALJ has the responsibility of reviewing the evidence, resolving the inconsistencies, and making a determination consistent with the evidence as a whole.").

In light of the foregoing, the Court finds Plaintiff's physical RFC is supported by substantial evidence and remand is not required on this basis. Because the ALJ's determination of Plaintiff's physical RRC was supported by substantial evidence, the Court need not address Plaintiff's contention that she would be disabled under Medical-Vocational Rule 201.14 had she been "properly limited" to only sedentary work. (Dkt. No. 9 at 9.)

### B. The ALJ's Step 5 Determination

The hypothetical presented to the VE by the ALJ required him, *inter alia*, to "assume an individual who would be limited to understanding, remembering, and carrying out simple instructions but not complex ones . . . who could carry out simple tasks . . . [w]ho could maintain attention for simple tasks, but who should do no more than occasional decision making." (T. 584.)

A VE's testimony may be relied upon by the ALJ only if a claimant's impairments are accurately portrayed. *Hudson v. Comm'r of Soc. Sec*, 5:10-CV-300, 2011 WL 5983342, at *9 (D. Vt. Nov. 2, 2011). Plaintiff claims the ALJ's hypothetical question to the VE failed to properly consider Plaintiff's deficiencies in concentration, persistence or pace, and as a result,

16

the VE's testimony did not constitute substantial evidence to support the ALJ's Step 5 determination that Plaintiff could perform work that exists in the national economy. (Dkt. No. 9 at 10-12.) Plaintiff argues the ALJ could not properly account for Plaintiff's deficiencies in concentration, persistence, and pace by restricting the hypothetic posed to the VE to simple tasks. *Id.*, *see Karabinas v. Colvin*, 16 F. Supp. 3d 206, 2015 (W.D.N.Y. 2014) (collecting cases).

The Second Circuit has found that failure to explicitly incorporate a claimant's limitations in concentration, persistence, or pace in a hypothetical is harmless error if "(1) medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," and the challenged hypothetical is limited "to include only unskilled work"; or (2) the hypothetical "otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]" *McIntyre*, 758 F.3d at 150; *see also Tana D. v. Berryhill*, No. 1:17-CV-0414 (CFH), 2018 WL 4011560, at *7 (N.D.N.Y. Aug. 22, 2018).

The ALJ's hypothetical was limited to unskilled work. (T. 584.) Moreover, it is by no means clear from the medical evidence that a limitation in concentration, persistence, or pace should have been included in the hypotheticals presented to the VE in this case. Even if it should, the ALJ's failure to do so was harmless error because the medical evidence demonstrates Plaintiff is capable of following simple instructions and tasks.

Rebecca Fisher, Psy.D., conducted a consultative psychiatric examination of Plaintiff on February 10, 2014. (T. 1005-08.) Plaintiff reported she was diagnosed with depression in 1998, which was "up and down." (T. 1005.) She reported her depression as typically controlled by medication, although she sometimes would cry and feel sad. (T. 1005-06.) Plaintiff complained

17

of cognitive problems after a 2009 motor vehicle accident, including short term and long term memory deficits. *Id*.

Dr. Fisher found Plaintiff cooperative with adequate social skills. *Id*. She was well groomed, her posture and motor behavior were normal, and eye contact was appropriate. *Id*. Plaintiff's speech intelligibility was fluent, the quality of her voice clear, and her expressive and receptive language adequate. *Id*. Plaintiff's thought processes were coherent and goal directed, with no evidence of delusions, hallucinations, or disordered thinking, and she was oriented x3 and her sensorium clear. *Id*. Dr. Fisher found Plaintiff's attention and concentration to be intact, estimated Plaintiff's intellectual functioning to be in the average range, with her general fund of information somewhat limited, and her insight and judgment to be fair. (T. 1006-07.)

In terms of daily living, Plaintiff reported she needs help stepping into the shower and putting her socks on due to pain. (T. 1007.) She does light cooking, cleaning, and laundry because of her pain and reported not having any ambition. *Id*. She sometimes goes shopping with her husband. *Id*. She used to bowl, play pool, and "do bingo." *Id*. She no longer has hobbies, but "she reads big print." She reported spending her days reading, watching television, and picking up the house. *Id*.

Dr. Fisher opined in her medical source statement that Plaintiff:

> does not appear to have limitation in her ability to follow and understand simple direction, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, and relate adequately with others. She may have mild limitation in her ability to perform complex tasks independently and appropriately deal with stress. Difficulties may be caused by depression.

*Id*. Dr. Fischer recommend that Plaintiff become involved in individual therapy to address her symptoms of depression and to continue with her psychiatric treatment as provided. (T. 1008.)

18

Her prognoses was fair, given severity of symptoms. *Id*. She found Plaintiff would be able to manage her own funds. *Id*. The ALJ accorded great weight to Dr. Fischer's opinion in formulating the mental RFC. (T. 188.)

In addition, state agency consulting psychologist, Eric Selesner, Psy.D., completed a Psychiatric Review Technique on February 19, 2014. (T. 625.) He found "moderate" paragraph b limitations in concentration, persistence, or pace. *Id*. In his Mental Residual Functional Capacity Assessment on Plaintiff, Dr. Selesner found Plaintiff's "ability to maintain attention and concentration for extended periods" to be "not significantly limited." (T. 628.) Dr. Selesner also found Plaintiff was "not significantly limited" in a number of areas which suggest she can engage in simple, routine tasks or unskilled work, including, *inter alia*, the ability to remember locations and work-like procedures; understand and remember very short and simple instructions as well as detailed instructions; carry out very short and simple instruction as well as detailed instruction; sustain an ordinary routine without special supervision; work in coordination with or in proximately to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public, ask simple questions or request assistance; accept instruction and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions; and set realist golf or make plans independently of other. (T. 627-29.)

Upon consideration of the evidence, the ALJ noted there was little evidence to support her limitations. (T. 188.) Plaintiff admitted during the hearing that she had never been evaluated for memory loss and was advised to exercise her memory by doing crossword puzzles and word scrambles. (T. 560.) A 2012 CT of Plaintiff's brain without contrast was unremarkable despite her complaints of confusion and decreased concentration. (T. 1092).

It is clear the medical evidence demonstrates Plaintiff is capable of following simple instructions and tasks. In light of the foregoing, the Court finds the ALJ's decision was based upon correct legal standards and substantial evidence supports her determination that Plaintiff was not under a disability within the meaning of the SSA.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**.

Dated: September 24, 2018
Syracuse, NY

Thérèse Wiley Dancks
United States Magistrate Judge